IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| EUGENE HARRIS TAYLOR, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:17-CV-633-O |
| § | |
| LORIE DAVIS, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Eugene Harris Taylor, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On July 7, 2011, a jury in Tarrant County, Texas, Case No. 1178601D, found Petitioner guilty of indecency with a child by contact, assessed his punishment at eight years' confinement, and recommended that the sentence be suspended. SHR-02[1] 116, 159, ECF No. 21-40. The trial court sentenced Petitioner accordingly and suspended his sentence for ten years. *Id.* The trial court's judgment of conviction by the jury was affirmed on appeal and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. Docket Sheet 1-2, ECF No. 21-2. The state subsequently petitioned the trial court to revoke Petitioner's community supervision and, on

---

[1]"SHR-02" refers to the record of Petitioner's relevant state habeas-corpus proceeding in WR-86,383-02.

November 2, 2015, following a contested revocation hearing, the court revoked Petitioner's community supervision and assessed his punishment at the original eight-year sentence. SHR-02 117, 199, ECF No. 21-40. The trial court's judgment revoking community supervision was affirmed on appeal and the Texas Court of Criminal Appeals denied Petitioner's petition for discretionary review. Electronic R. 1, ECF No. 21-26. Petitioner also challenged the judgment revoking community supervision in a postconviction state habeas-corpus application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. SHR-01 Action Taken, ECF No. 21-38.

On appeal, Petitioner argued, among other things, that the trial court abused its discretion by revoking his community supervision, and the appellate court addressed the matter as follows:

> [Petitioner] argues that the trial court abused its discretion by revoking his community supervision. We review an order revoking community supervision for an abuse of discretion. A trial court abuses its discretion when it makes a decision that lies outside the zone of reasonable disagreement.
>
> In a revocation hearing, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision as alleged in the petition to revoke. "The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. A trial court does not abuse its discretion by revoking probation upon proof of a single violation, regardless of evidence that the probationer otherwise fulfilled the conditions.
>
> In its revocation petition, the State alleged,
>
> [D]uring the effective period of . . . community supervision, [Petitioner] violated the terms and conditions set by the Court as follows:
>
> 1. **SEX OFFENDER TREATMENT:** [Petitioner] was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. As recommended by the evaluation, attend

2

and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the Court or the supervision officer. . . . Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.

In violation of this condition, [Petitioner] was suspended from sex offender treatment on or about June 29, 2015.

2. **SEX OFFENDER TREATMENT:** [Petitioner] was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. . . .

In violation of this condition, [Petitioner] failed to complete one-third of sex offender treatment within one year of its initiation.

3. **SEX OFFENDER TREATMENT:** [Petitioner] was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. . . .

In violation of this condition, [Petitioner] failed to complete two-thirds of sex offender treatment within two years of its initiation.

4. **CONTACT WITH CHILDREN:** [Petitioner] was ordered to have no contact with any child under 17 years of age unless a chaperone approved by the Court or supervision officer is present.

In violation of this condition, [Petitioner] had contact with a child under 17 years of age without a [chaperon] approved by the court or supervision officer present on or before November 13, 2014.

[Petitioner] pled not true to each of these allegations, but after considering the parties' presentation of evidence, the trial court found the second through fourth allegations to be true. The evidence supports the trial court's findings. Jennifer Aguilar, [Petitioner]'s probation officer, testified that [Petitioner] had been placed in a county-approved sex offender treatment program and had attended that program for nineteen months. But according to Aguilar, although that program required [Petitioner] to complete thirty goals at a rate of ten per year, he completed only six in the nineteen months. Because [Petitioner] was "way behind" in completing the program and because he was dissatisfied with aspects of the program, a judge allowed him to switch treatment providers. [Petitioner] spent several months working with the second treatment provider but completed few goals. His second treatment

3

provider eventually suspended him from the program because his probation officer said that [Petitioner] had been taking pictures of children and peeping in adults' windows. Thus, the evidence demonstrates that [Petitioner] did not complete one-third of his sex offender treatment within a year of its initiation or complete two-thirds of the treatment within two years, just as the State alleged in its revocation petition. Viewing the evidence in the light most favorable to the trial court's revocation decision, we conclude that the trial court did not abuse its discretion by finding that he violated a term of his community supervision—completing at least one-third of his sex offender treatment each year—and by revoking his community supervision.

> . . .

Mem. Op. 4-7, ECF No. 21-20 (citations omitted).

## II. ISSUES

In seven grounds for relief, Petitioner claims he received ineffective assistance of trial counsel during the revocation proceedings because counsel failed to—

(1) object to inadequate notice as to the alleged violations of his community supervision;

(2) investigate the Counsel on Sex Offender Treatment's "standards relative to 'goals' and polygraphs, including consulting an expert on sex offender treatment";

(3) subpoena probation officers and his therapist;

(4) "establish the connection between 'goals' and polygraphs";

(5) raise a "contractual waiver of performance defense";

(6) impeach "state witnesses' bias and motive to revoke him"; and

(7) challenge his revocation as "being [an] unconstitutional penalty for exercising his right to religious freedom and practice."

Pet.6-7.1, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his claims in state court and that the

petition is neither successive nor time-barred. Resp't's Answer 8, ECF No. 22.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). It is the petitioner's burden to rebut the presumption of correctness with clear and convincing evidence. *Id.*

Furthermore, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1191-92 (2018). If the opinion was made without a written explanation, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same

reasoning," and give appropriate deference to that decision. *Id.* In other words, federal habeas-corpus courts confronted with an unexplained state court decision "are to 'look through' the decision to an earlier state court opinion and presume that the earlier one provides the relevant rationale." *Thomas v. Vannoy,* 898 F.3d 561, 568 (5th Cir. 2018) (citing *Wilson,* 138 S. Ct. at 1192).

**B. Application**

A probationer is entitled to the effective assistance of counsel at a probation revocation hearing. *Mempa v. Rhay,* 389 U.S. 128, 137 (1967). *Accord Kirtley v. State,* 56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington.* 466 U.S. 668 (1984). To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 687. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the

6

state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised his ineffective-assistance-of-counsel claims in his state habeas-corpus application and the state habeas court conducted a hearing by affidavit. SHR-02 92-105, ECF No. 21-40. Counsel, Abe Factor, responded to Petitioner's allegations in an affidavit as follows (any spelling, punctuation, and/or grammatical errors are in the original):

> I was retained to represent [Petitioner] for the revocation hearing on his probation for indecency with a child by contact, before presiding judge Elizabeth Beach in Criminal District Court Number One of Tarrant County.
>
> In the State's First Amended Petition to Revoke Probated Sentence, there were four paragraphs alleging [Petitioner] violated the terms of his community supervision. Based on the testimony and evidence presented at the hearing, the trial court found three of those paragraphs to be true; that [Petitioner] had failed to complete one-third of his sex offender treatment within the first year of his probation; that [Petitioner] had failed to complete two-thirds of the sex offender treatment within the first two years of his community supervision; and, that [Petitioner] had contact with a child under 17 years of age without an approved chaperone present.
>
> Notably, a finding of even one violation was sufficient to support the trial court's revocation of [Petitioner]'s probation, and the State's burden of proof was merely to show by a preponderance of the evidence that [Petitioner] had violated a term of his probation.
>
> I represented [Petitioner] on the appeal of his revocation, which was affirmed by the Second Court of Appeals and his Petition for Discretionary Review was denied by the Court of Criminal Appeals.
>
> In his Application for Writ of Habeas Corpus, [Petitioner] has alleged in Ground One that he received ineffective assistance of counsel at his revocation hearing.
>
> **In reference to Ground Number One of [Petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:**
>
> [Petitioner] complains that I failed to 1) "object to inadequate notice of the violations," 2) "failed to investigate sex offender treatment standards of practice," 3)

"failed to consult/subpoena sex offender treatment expert," 4) "failed to subpoena the first two probation officers assigned to his case or the first sex offender treatment provider to which he was assigned," 5) "failed to establish clear connection between 'goals' and polygraphs," 6) "failed to present contractual performance waiver and interference defense," 7) "failed to cross-examine his third probation officer and second sex offender treatment provider on how [Petitioner] managed to allegedly breached [his] probation and treatment contracts over two years," and 8) to impeach [Petitioner]'s second sex offender treatment provider and third probation officer regarding their bias/motivation to revoke [Petitioner] because of his medical condition and inability to polygraph."

Of particular note, in his Application, [Petitioner] fails to controvert or even address the trial court's finding that he had contact with child under 17 years of age without an approved chaperone present. The testimony at the hearing from Deborah Moore, who was one of [Petitioner]'s sex offender treatment providers, showed that [Petitioner] had admitted to her that he was a "greeter" at his church, and the course of his duties as a greeter, he often greeted children under 17 years of age, shook their hand and handed them a written program or "bulletin." At no time during the approximately one year that [Petitioner] was a greeter at his church was there an approved chaperone present. The unchaperoned contact with children under 17 years of age was no doubt of great concern to the trial court, as over strenuous objection, the evidence presented at the hearing showed that during the administration of a penile plethysmograph, [Petitioner] had a hands-free ejaculation to female teens between 11 and 16 years of age."

In regards to [Petitioner]'s failure to complete his sex offender treatment goals on schedule, the uncontroverted testimony from his sex offender treatment provider showed that after three years of treatment, [Petitioner] had managed to complete only thirty-five percent of his treatment, although his conditions of probation required that he complete one-third in each of his first three years of probation.

In regards, to his specific complaints, [Petitioner] does not articulate what evidence would have been discovered had I undertaken any of the listed tasks, how such evidence would have controverted the evidence showing [Petitioner]'s various violations of his probation, or even how such evidence might have been beneficial to his case. In short, [Petitioner] does not even credibly allege that there is a reasonable probability that the result of the proceeding would have been different had the listed tasks been undertaken.

The entire focus of my strategy at the revocation hearing was to mitigate the alleged shortcomings of [Petitioner] regarding his various violations. This is because it was an objective fact that [Petitioner] had failed to complete his sex offender

8

treatment goals on schedule, and that he had admitted to his sex offender treatment provider that he came into contact with children under 17 years of age in the course and scope of his duties as a greeter at church. The fact that the trial court ultimately found that [Petitioner] had violated the terms of his probation and sentenced him to eight years incarceration rather than continue his probation or sentence him to a shorter length of time does not diminish the efficacy or propriety of the strategy at the sentencing hearing.

      In summary, the State met its burden of proof to show that [Petitioner] had violated at least one condition of his probation. This is because [Petitioner] had in actuality violated multiple conditions of his community supervision. The trial court was therefore well within its discretion to revoke [Petitioner]'s probation. [Petitioner] had failed to credibly allege a reasonable probability that the results of the proceeding would have been different had the complained-of tasks been performed. In my professional opinion, [Petitioner] did not receive ineffective assistance of counsel at his revocation hearing.

*Id.* at 109-12 (citations omitted).

Based on counsel's affidavit, the documentary record, and her own recollection of counsel's performance during the revocation proceedings, the state habeas judge entered the following relevant factual findings, which, although numerous, are provided to assist the reader:

8.     On July 23, 2015, the State filed its Petition to Revoke Probated Sentence.

. . .

10.    On October 7, 2015, the State filed its First Amended Petition to Revoke Probated Sentence.

11.    The allegations raised in the State's first amended petition were identical to those raised in its original petition.

. . .

15.    On October 19, 2015, [Petitioner] stated that he had a chance to go through the State's First Amended Petition to Revoke Probated Sentence with Mr. Factor.

16.    Mr. Factor understood that violations two and three alleged that [Petitioner] had not completed one-third of his sex offender treatment within one year and

two-thirds of this sex offender treatment within two years.

17. After three years in treatment, [Petitioner] had only completed 35% of his treatment.

18. Mr. Factor was given adequate notice of the violations.

19. During the revocation hearing, Deborah Moore ("Moore") testified that [Petitioner] told her he had contact with minors on a consistent basis as the greeter at his church.

20. [Petitioner] admitted to Moore that he would hand leaflets to minors and would say "hello" to them if they came in the door.

21. During the revocation hearing, [Petitioner] denied having any contact with minors while a greeter at his church.

22. This Court did not find credible [Petitioner]'s testimony that he did not have any contact with minors while volunteering as a greeter at his church.

23. [Petitioner] admits he had unchaperoned contact with minors while on community supervision.

24. The focus of Mr. Factor's strategy was to mitigate [Petitioner]'s various violations.

25. It was an objective fact that [Petitioner] failed to complete his sex offender treatment goals on schedule.

26. It was an objective fact that [Petitioner] admitted that he had had contact with minors as part of his duties as a greeter at his church.

27. [Petitioner] presents no evidence that demonstrated he did not commit all of the alleged violations against him.

28. [Petitioner] presents no evidence or authority that would have caused the trial court to not revoke his probation had counsel presented it.

29. [Petitioner] presents no evidence that an investigation into the probation department's treatment standards of practice would have benefitted his defense.

30. [Petitioner] presents no statements from his first probation officer.

31. [Petitioner] presents no evidence that testimony from his first probation officer would have benefitted his defense.

32. There is no evidence that counsel's representation was deficient because he did not subpoena [Petitioner]'s first probation officer.

33. [Petitioner] presents no statements from his second probation officer.

34. [Petitioner] presents no evidence that testimony from his second probation officer would have benefitted his defense.

35. There is no evidence that counsel's representation was deficient because he did not subpoena [Petitioner]'s second probation officer.

36. [Petitioner] presents no statements from his first sex offender treatment provider.

37. [Petitioner] presents no evidence that testimony from his first sex offender treatment provider would have benefitted his defense.

38. There is no evidence that counsel's representation was deficient because he did not subpoena [Petitioner]'s first sex offender treatment provider.

39. [Petitioner] presents no evidence that he had a valid defense to violating the terms of his probation.

40. [Petitioner] presents no evidence to demonstrate that he was unable to complete the goals of his sex offender treatment because of his medical condition.

41. [Petitioner] presents no evidence, or authority, that a contractual performance waiver argument would have been successful.

42. [Petitioner] presents no evidence, or authority, that an interference defense would have been successful.

43. [Petitioner] presents no evidence, or authority, that an interference defense would have been successful.

44. [Petitioner] presents no evidence, or authority, that cross-examining the probation officer III and sex offender treatment provider II on why [Petitioner] was allowed to continually breach probation and the treatment contracts for over two years would have benefitted his defense.

45. It is reasonable that counsel did not want to highlight for the trial court that [Petitioner] had continually breached his probation and treatment conditions.

46. [Petitioner] presents no evidence that his second sex offender treatment provider was biased against him.

47. [Petitioner] presents no evidence that his third probation officer was biased against him.

48. The trial court did not penalize [Petitioner] for attending church but for holding a position in the church that allowed him to have repeated contact with minors.

49. [Petitioner] would not have been penalized if he was only attending a church where minor children were present.

50. [Petitioner] presents no evidence to support his claim that counsel should have challenged [Petitioner]'s revocation as being an unconstitutional penalty for exercising his First Amendment right to practice religion.

51. There is no credible evidence that counsel's representation fell below an objective standard of reasonableness.

52. There was sufficient evidence to demonstrate by a preponderance of the evidence that [Petitioner] violated the conditions of his community supervision.

53. There is no credible evidence that counsel could have presented a defense that would have absolved of violating the conditions of his community supervision.

54. There is no credible evidence that counsel could have done anything to negate the fact that [Petitioner] violated the terms of his community supervision.

55. There is no credible evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different but for the alleged misconduct.

*Id.* at 117-21 (citations omitted).

Based on its findings, which were later adopted by the Texas Court of Criminal Appeals in denying relief, the state habeas court concluded that Petitioner failed to establish either prong of the

*Strickland* standard. *Id.* at 122-25. Petitioner presents no evidence, much less clear and convincing evidence, sufficient to rebut the state courts' factual findings, which are supported by the record; thus, this Court must defer to those findings. Having done so, the state courts' application of *Strickland* is not objectively unreasonable under the doubly-deferential standard applied to such claims. Contrary to Petitioner's assertions, the record reflects that counsel was familiar with the law and facts of the case; was adequately prepared for the revocation hearing; devised a legitimate trial strategy; and vigorously defended Petitioner during the revocation proceedings. Moreover, Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve strategic and tactical decisions made by counsel, and/or would have required counsel to make futile or frivolous motions or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (providing counsel is not required to make futile motions or frivolous objections); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Murray*

*v. Maggio,* 736 F.2d 279, 282-83 (5th Cir. 1984) (providing complaints of uncalled witnesses are not favored in federal habeas review and a petitioner must overcome a strong presumption that counsel's decision whether or not to call a particular witness was a strategic one); *Ngo v. Holland,* No. 4:13-CV-138-Y, 2013 WL 6284057, at *9 (N.D.Tex. Dec. 4, 2013) (providing "tactical and strategic choices made by counsel, including whether to cross-examine witnesses and to what extent, involve the exercise of professional judgment and are virtually unchallengeable on habeas review").

And, even if Petitioner could demonstrate deficient performance, which he has not, the record does not show that the outcome would have been different but for counsel's acts or omissions. There was ample evidence that, although given multiple opportunities to comply with the terms and conditions of his community supervision, Petitioner violated the terms and conditions in at least three respects as alleged in the amended revocation petition.

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 19th day of April, 2019.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**